UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x

TRUSTEES OF THE LOCAL 7 TILE INDUSTRY WELFARE FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY ANNUITY FUND, TRUSTEES OF THE TILE LAYERS LOCAL UNION 52 PENSION FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY RETIREE WELFARE FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY VACATION FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY SUPPLEMENTAL FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY PROMOTIONAL FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY TRAINING FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY BUILDING FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY DEFENSE FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY LOCAL POLITICAL ACTION COMMITTEE, TRUSTEES OF THE BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND, THE INTERNATIONAL MASONRY INSTITUTE, AND THE TRUSTEES OF THE BRICKLAYERS AND ALLIED CRAFTWORKERS POLITICAL ACTION COMMITTEE,

Plaintiffs,

-against-

ELA STONE CORP.,

Defendant.

---------------------------------------------------------------------x

REPORT AND RECOMMENDATION

No. 25-CV-3671-EK-JRC

JAMES R. CHO, United States Magistrate Judge:

Plaintiffs Trustees of the Local 7 Tile Industry Welfare Fund, Local 7 Tile Industry Annuity Fund, and Tile Layers Local Union 52 Pension Fund (collectively, the “Local 7 Benefit Funds”), Trustees of the Local 7 Tile Industry Retiree Welfare Fund, Local 7 Tile Industry Vacation Fund, Local 7 Tile Industry Supplemental Fund, Local 7 Tile Industry Promotional Fund, Local 7 Tile Industry Training Fund, Local 7 Tile Industry Building Fund, Local 7 Tile

Industry Defense Fund, and Local 7 Tile Industry Local Political Action Committee (collectively, the "Local 7 LMRA Funds," together with the Local 7 Benefit Funds, hereinafter referred to as the "Local Funds"), Trustees of the Bricklayers & Trowel Trades International Pension Fund (the "IPF"), International Masonry Institute ("IMI"), and Trustees of the Bricklayers and Allied Craftworkers Political Action Committee ("BAC PAC," together with IMI, hereinafter referred to as the "International LMRA Funds") (the International LMRA Funds and the IPF are collectively referred to hereinafter as the "International Funds," and the Local Funds together with the International Funds are collectively referred to hereinafter as the "Funds" or "plaintiffs"), bring this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1145, and the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. *See* Am. Compl. ¶ 1, Dkt. 18.

Plaintiffs seek to recover delinquent employer contributions as identified through an audit, as well as accrued interest, liquidated damages, audit costs, and attorneys' fees and costs. *Id.* ¶ 33 (Wherefore Clause). Upon plaintiffs' application and in light of defendant's failure to appear in or otherwise defend this action, the Clerk of the Court entered defendant's default on October 24, 2025. Dkt. 23. Plaintiffs now move for default judgment against defendant. *See generally* Mot. for Default J., Dkt. 35; Mem. of Law in Supp. of Pls.' Mot. for Default J. ("Pls.' Mem."), Dkt. 39.[1]

Currently pending before this Court, on a referral from the Honorable Eric R. Komitee, is plaintiffs' motion for default judgment. *See* Order Referring Mot. dated July 24, 2026. For the

[1] Plaintiffs initially filed a motion for default judgment on December 1, 2025, Dkt. 25, that the Court denied on procedural grounds. *See* Dkt. entry dated July 9, 2026.

reasons set forth below, this Court respectfully recommends granting, in large part, plaintiffs' motion for default judgment.

## I. Relevant Factual Background

The following facts are drawn from plaintiffs' Amended Complaint and supporting declarations, *see* Dkts. 18, 36–37, and are accepted as true for purposes of adjudicating this motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

The Local 7 Benefit Funds are multiemployer employee benefit plans within the meaning of Section 3(3), (37) of ERISA. Am. Compl. ¶ 4. The Trustees of the Local 7 Benefit Funds are fiduciaries of the Local 7 Benefit Funds within the meaning of section 3(21) of ERISA. *Id.*

The Local 7 LMRA Funds are employer and employee trustees of multiemployer labor management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with sections 302(c)(4) and 302(c)(6)–(9) of the LMRA. *Id.* ¶ 5.

The IPF is a multiemployer labor-management trust fund organized and operated pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the Taft-Hartley Act. *Id.* ¶ 6. The IPF is a multiemployer employee benefit plan within the meaning of Section 3(3), (37) of ERISA. *Id.* The Trustees of the IPF are fiduciaries of the IPF within the meaning of section of 3(21) of ERISA. *Id.*

The International LMRA Funds are employer and employee trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with sections 302(c)(4) and 302(c)(6)–(9) of the LMRA. *Id.* ¶ 7.

At all relevant times, defendant ELA Stone Corp. has been a signatory to a collective bargaining agreement ("CBA") with the Tile Setters and Tile Finishers Union of New York and New Jersey, Local Union No. 7 of the International Union of Bricklayers and Allied

Craftworkers (the "Union"). Am. Compl. ¶¶ 11–12. Under the CBA and the Funds' policies for the collection of benefit contributions (the "Collection Policy"), defendant was required to "remit benefit contributions to the Funds as third-party beneficiaries of the CBA, including contributions for related entities on whose behalf the Funds serve as collection agents . . . in connection with all work performed within the trade and geographical jurisdiction of the Union ('Covered Work')." Am. Compl. ¶ 13; CBA, Dkt. 36-1; Collection Policy, Dkt. 36-4. Pursuant to the CBA and the Collection Policy, defendant is required to remit contributions to the Funds on or before the 15th day of the month in amounts determined by multiplying specified hourly contribution rates by the number of hours that defendant's employees performed Covered Work during the preceding calendar month. Am. Compl. ¶ 14; CBA, Dkt. 36-1; Collection Policy, Dkt. 36-4. The CBA and the Collection Policy authorize the Funds to conduct audits of signatory employers to ensure their compliance with their contractual obligations. *See* Am. Compl. ¶¶ 15, 16; CBA, Art. IX, § 3(G); Collection Policy, Art. IV. The CBA further provides that it would "automatically renew itself and continue in full force and effect from year to year unless written notice of election to terminate or modify any provision of this Agreement is given by one (1) party . . . at least three (3) months prior to the expiration of this Agreement." Decl. of William Hill ("Hill Decl.") ¶ 4, Dkt. 36 at ECF page[2] 3; Dkt. 36-1 (CBA) at ECF page 50. Neither defendant nor the Union has provided notice of any election to terminate or modify the CBA. Hill Decl. ¶ 5. Accordingly, the CBA remains in effect and defendant remains bound by it.

Under the CBA and the Collection Policy, if the Funds bring legal action to collect amounts owed, the Funds are entitled to recover the unpaid contributions, interest, liquidated

[2] References to the page numbers generated by the Court's electronic case filing system appear as "ECF page."

damages, attorneys' fees and audit costs. Am. Compl. ¶¶ 25, 32; CBA, Art. IX, §§ 3(L), 5(G); Collection Policy, Art. II, § 5. The Collection Policy further provides that interest is charged at a rate of ten percent per annum on delinquent contributions owed to the Local Funds and fifteen percent per annum on delinquent contributions owed to the International Funds. *See* Collection Policy, Art. II, § 5; Hill Decl. ¶ 11; Am. Compl. ¶ 15. Liquidated damages are calculated based on 20 percent of the delinquent contributions. *See* Collection Policy, Art. II, § 5; Hill Decl. ¶ 11; Am. Compl. ¶ 15.

**Audit Findings**

Pursuant to the CBA and Collection Policy, in 2024, the Funds' auditors requested that defendant make available certain records for the purpose of conducting a payroll audit for the period of July 17, 2019 through December 31, 2023. *See* Decl. of Terry Vouvoudakis ("Vouvoudakis Decl.") ¶¶ 12–16, 25, Dkt. 37. On February 2, February 15, and March 26, 2024, the Funds' auditors emailed defendant the preliminary audit report and requested additional documents to finalize the audit. *Id.* ¶ 24. Defendant failed to provide the requested records or submit any rebuttal to the preliminary audit findings and, therefore, the audit became final. *Id.* To date, defendant has failed to provide the requested information or any additional payroll records. *Id.*

On April 9, 2024, the auditors notified defendant that due to defendant's failure to respond to prior correspondence, the preliminary audit report was deemed final. *See* Audit Report dated Apr. 9, 2024, Dkt. 37-3. Due to the absence of payroll records provided by defendant, the auditors estimated the amount of the delinquent contributions based on payments made to defendant discovered by the auditors while conducting audits of other employers. Vouvoudakis Decl. ¶¶ 14–22. In total, the auditors calculated that defendant owed the Funds

unpaid contributions of $51,887.10 for the period June 17, 2019 through December 31, 2023; interest in the amount of $17,173.85[3]; liquidated damages of $9,138.81, and audit costs of $3,200. *Id.* ¶¶ 25–27, 30; Revised Audit Report dated Feb. 4, 2026, Dkt. 44; [Suppl.] Decl. of Terry Vouvoudakis ("Suppl. Vouvoudakis Decl.") ¶ 6, Dkt. 43. To date, defendant has not paid the delinquent contributions despite plaintiffs' demands, nor challenged auditors' findings set forth in the Audit Report and Revised Audit Report. *See* Hill Decl. ¶ 15; Am. Compl. ¶ 18.

## II. Procedural Background

On July 2, 2025, plaintiffs commenced this action. *See* Compl., Dkt. 1. On July 3, 2025, defendant was served with the Summons and Complaint. Dkt. 8. On September 17, 2025, plaintiffs filed an Amended Complaint. Dkt. 18. On September 17, 2025, plaintiffs served the Summons and Amended Complaint on defendant. Dkt. 20. Defendant has failed to answer the Amended Complaint or otherwise appear in this case, and on October 24, 2025, the Clerk of the Court entered a Certificate of Default against defendant. Dkt. 23.

On July 21, 2026, plaintiffs moved for default judgment against defendant. Dkt. 35. Plaintiffs request an award of delinquent contributions of $51,887.10 for the period June 17, 2019 through December 31, 2023; interest at an annual rate owed to the Local Funds of 10 percent and an annual rate owed to the International Funds of 15 percent as of October 31, 2024, for a total of $19,543.31[4]; liquidated damages in the amount of 20 percent of the delinquent contributions for a total of $9,138.81; audit costs of $3,200; attorneys' fees and costs totaling $10,146.77; and post-judgment interest. [Proposed] Default J., Dkt. 38-11.

---

[3] In response to the Court's Order directing plaintiffs to supplement, among other things, their interest calculation, plaintiffs provided the Court with a Revised Audit Report in which plaintiffs reduced the requested interest amount from $19,543.31 to $17,173.85. All other audit findings remained the same. *Compare* Audit Report, Dkt. 37-3 at ECF page 1, *with* Revised Audit Report, Dkt. 44 at ECF page 1; Order dated Aug. 3, 2026. On August 10, 2026, plaintiffs served the Revised Audit Report on defendants. Dkt. 45.

[4] The Revised Audit Report seeks interest of $17,173.85. Dkt. 44 at ECF page 1.

## III. Discussion

### A. Default Judgment

Under Rule 55 of the Federal Rules of Civil Procedure, there are two steps to entering a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of the Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. *See id.*; Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). This first step is nondiscretionary. *See United States v. Conolly*, 694 F. App'x 10, 12 (2d Cir. 2017). Second, after the Clerk of the Court enters a defendant's default, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the plaintiff may apply to the court for a default judgment. *See* Fed R. Civ. P. 55(a), (b)(2).

Here, on October 24, 2025, the Clerk of the Court entered a certificate of default against defendant. *See* Dkt. 23. To date, defendant has not appeared or moved to vacate the entry of default.

"Default judgments are generally disfavored and are reserved for rare occasions." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quoting *Enron Oil*, 10 F.3d at 96 (internal quotation marks omitted)). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." *Enron Oil*, 10 F.3d at 95–96. Thus, in light of the "oft-stated preference for resolving disputes

on the merits," doubts should be resolved in favor of the defaulting party. *See id.* Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because defendants are in default. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

Once the Clerk enters a certificate of default, the defendant is deemed to have admitted the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Publ'g Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). A fact is not considered "well-pleaded," however, "if it is inconsistent with the other allegations of the complaint or with facts of which the court can take judicial notice, or is contrary to uncontroverted material in the file of the case." *Hop Hing Produces Inc. v. Lin Zhang Trading Co., Inc.*, No. 11-CV-3259, 2013 WL 3990761, at *3 (E.D.N.Y. Aug. 5, 2013) (citation modified). In addition, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Laby's, Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (citation modified); *see also TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("Prior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law." (citation modified)). Ultimately, whether to grant a motion for default judgment is "left to the [court's] sound discretion." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (quoting *Enron Oil*, 10 F.3d at 95); *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017).

Defendant did not respond to the Complaint despite proper service. Plaintiffs filed affidavits confirming service of the motion for default judgment and this Court's order scheduling a hearing on the motion. *See* Dkts. 40, 42. Defendant has nonetheless failed to respond to plaintiffs' motion for default judgment or otherwise to appear in this action. Accordingly, the Court recommends finding that the failure by defendant to answer or otherwise respond to the Complaint constitutes an admission of the factual allegations therein. The Court now assesses whether those facts establish the defaulting defendant's liability.

**B. Liability Under ERISA and the LMRA**

Section 209 of ERISA requires an employer to "maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a)(1). These records must be "available for examination for a period of not less than six years . . . ." 29 U.S.C. § 1027.

Section 515 of ERISA further states, as follows:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. "ERISA vests the Court with jurisdiction over civil actions brought by fiduciaries of employee benefit plans to enforce provisions of such plans." *Trs. of the Loc. 7 Tile Indus. Welfare Fund v. City Tile, Inc.*, No. 10-CV-322, 2011 WL 917600, at *1 (E.D.N.Y. Feb. 18, 2011), *report and recommendation adopted*, 2011 WL 864331 (E.D.N.Y. Mar. 10, 2011).

Plaintiffs allege that defendant is an "employer," and that plaintiffs are "multiemployer benefit plans," and "fiduciaries" under ERISA. Am. Compl. ¶¶ 4, 6, 9; 29 U.S.C. § 1002(3), (21), (37). Plaintiffs further allege that defendant was obligated to make contributions to plaintiffs pursuant to the CBA and to provide relevant documents and information pursuant to an

audit. Am. Compl. ¶¶ 11–16. Defendant, however, failed to pay the outstanding contributions and refused to comply with a full audit. *Id.* ¶¶ 17–19.

As set forth in the Amended Complaint and accompanying motion for default judgment, this Court finds that defendant has failed to comply with its contractual obligations and with the statutory requirements of ERISA. It is undisputed that defendant is in default. Defendant failed to file an answer to the Amended Complaint and failed to otherwise oppose plaintiffs' motion for default judgment. *See Windward Bora, LLC v. Chazon*, No. 19-CV-3912, 2020 WL 1034362, at *3 (E.D.N.Y. Jan. 8, 2020) (defendant's "default is crystal clear—it does not even oppose this motion" (citation modified)), *report and recommendation adopted*, 2020 WL 1031532 (E.D.N.Y. Mar. 3, 2020). Further, the defendant company has failed to retain counsel. A failure to obtain counsel constitutes a failure to defend because corporations cannot proceed in federal court *pro se*. *See Shapiro, Bernstein & Co. v. Cont'l Record Co.*, 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (holding that "a corporation cannot appear other than by its attorney").

Despite plaintiffs' formal request to defendant to remit the required contributions, defendant has not made payment. Further, notwithstanding service of the Amended Complaint and the motion for default judgment, defendant has not appeared in this action, nor disputed plaintiffs' allegations or otherwise challenged the audit findings. The Amended Complaint sets forth facts establishing a claim that the defendant violated Section 515 of ERISA, as well as various provisions of the applicable CBA and Collection Policy. These factual allegations are sufficient to establish defendant's liability under ERISA for failure to make the required contributions.

Section 301(a) of the LMRA authorizes this Court to enforce the CBA. *See* 29 U.S.C. § 185(a). The LMRA "permits a union to sue an employer in federal court for breach of a

collective bargaining agreement" and recover "'non-ERISA' sums such as union dues." *Cement & Concrete Workers Dist. Council Welfare Fund v. Superior Gunite*, 742 F. Supp. 3d 309, 315 (E.D.N.Y. 2024). Plaintiffs are "employer and employee trustees of multiemployer labor-management trust funds" under the LMRA and defendant is "an employer in an industry affecting commerce within the meaning of section 501 of the LMRA." Am. Compl. ¶¶ 5, 7, 9; *see also* 29 U.S.C. §§ 142, 186(c)(4), (6)–(9). Defendant was required to remit benefit contributions to the Funds as third-party beneficiaries of the CBA. Am. Compl. ¶ 13. Plaintiffs' uncontested allegations are sufficient to establish defendant's liability under the LMRA.[5] *See*

---

[5] Here, plaintiffs seek to recover unpaid union dues even though the Union is not a party to the action. *See* Revised Audit Report, Dkt. 44 at ECF page 2. Generally, the designation of plaintiff-trustees as collection agents for the Union would not confer standing on plaintiffs to bring claims on a non-party's behalf. *See Trs. of Loc. 7 Tile Indus. Welfare Fund v. Castle Stone and Tile, Inc.*, No. 17-CV-3187, 2022 WL 2063267, at *16 (E.D.N.Y. June 8, 2022); *Trs. of Loc. 7 Tile Indus. Welfare Fund v. AM Tile Specialty Constr.*, No. 19-CV-1809, 2020 WL 7034025, at *7 (E.D.N.Y. Sept. 23, 2020), *report and recommendation adopted*, 2020 WL 7021646 (E.D.N.Y. Nov. 30, 2020). However, under the circumstances, where the submission of union dues to the Union and benefit contributions to the benefit funds were made pursuant to a "one-check" system as provided in the applicable collective bargaining agreements, courts in this District have permitted plaintiff-trustees to recover amounts owed to the Union. *See Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Toros Bros. Constr. Corp*., No. 24-CV-6634, 2025 WL 3265230, at *3–4 & n.5 (E.D.N.Y. Nov. 24, 2025); *Trs. of the Pavers v. Atl. Steel Sols., LLC*, No. 22-CV-5047, 2023 WL 5152421, at *1 n.1 (E.D.N.Y. May 16, 2023).

The Amended Complaint alleges that each collective bargaining agreement provides that defendant was required to pay contributions for related entities on whose behalf the benefit funds "serve as collection agents." Am. Compl. ¶ 13. Under the CBA, the employer is required to remit international and local union dues for each employee to the Fund Administrator "through the purchase of contribution receipts via electronic means under the Contribution Receipt System ('CRS')." CBA, Art. XXVI, § 2; *id.* Art. IX, § 3(F). In other words, the employer pays all amounts due under the collective bargaining agreement, in a lump sum, to the Fund Administrator, who deposits the funds in a clearing account and allocates the payments according to Schedule A of the applicable collective bargaining agreement. *See, e.g.*, CBA, Art. IX, § 4 ("the Union has agreed to indemnify and hold harmless the Trustees from any and all claims, actions and proceedings arising out of said payment"); Rate Schedules, Dkt. 36-3 ("Please remit via the CRS system . . . . Please make check payable to Local 7 Clearing Account."). The Court, therefore, finds that plaintiffs have standing to recover unpaid union dues. *See Toros Bros. Constr.*, 2025 WL 3265230, at *4 n.5; *Atl. Steel Sols.*, 2023 WL 5152421, at *1 n.1; *see generally Trs. of the Loc. 7 Tile Indus. Welfare Fund v. Kimo Tile & Marble, Ltd. Liab. Co.*, No. 23-CV-7377, 2026 U.S. Dist. LEXIS 154719, at *12 (E.D.N.Y. July 10, 2026) (awarding Trustees fringe benefit contributions and dues checkoffs); *Trs. of Loc. 7 Tile Indus. Welfare Fund v. Top Stone & Tile Inc.*, No. 24-CV-7567, 2025 WL 3461041, at *1 n.1 (E.D.N.Y. Aug. 15, 2025) ("The Welfare Fund is also the 'designated collection agent' for the Tile Setters and Tile Finishers Union of New York and New Jersey, Local Union No. 7 of the International Union of Bricklayers and Allied Craftworkers (the 'Union'), which collects dues to the Union (the 'Dues Check-Off') and remittances to the Local 7 Tile Industry Political Action Committee (the 'Tile Industry Political Action Committee') and the Bricklayers and Allied Craftworkers Political Action Committee"), *report and recommendation adopted*, 2026 WL 609388 (E.D.N.Y. Mar. 4, 2026).

*Finkel v. Allstar Elec. Corp.*, No. 11-CV-3222, 2013 WL 4806951, at *4 (E.D.N.Y. Sept. 9, 2013) ("Plaintiff has established liability under Section 301 of the LMRA because it sufficiently pleads that [defendants] failed to remit the Required Contributions in accordance with their obligations under the CBAs.").

In light of the foregoing, this Court respectfully recommends granting default judgment on plaintiffs' claims under ERISA and the LMRA.

**C. Damages**

While the allegations of a complaint concerning liability are deemed admitted upon entry of default, allegations relating to damages are not. *See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citing *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). Rather, a court must ensure that there is an evidentiary basis for the damages sought by a plaintiff before entering judgment in the amount demanded. *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* Fed. R. Civ. P. 55(b)(2); *Joe Hand Promotions, Inc. v. Levin*, No. 18-CV-9389, 2019 WL 3050852, at *3 (S.D.N.Y. July 12, 2019) (holding that a hearing is not necessary as long as the Court ensures that there was a basis for the damages specified in the default judgment); *Fustok*, 873 F.2d at 40 (noting that a court may rely on detailed affidavits and documentary evidence as the basis for determining damages to be awarded in a default judgment).

Plaintiffs have submitted, in support of their motion, declarations from William Hill, the President of the Union (Dkt. 36), and Terry Vouvoudakis, payroll auditor for the Funds (Dkts.

37, 43). The declarations detail the calculation of defendant's delinquent contributions as per the CBA, as well as calculations of interest and audit costs incurred. Further, plaintiffs have provided copies of the Collection Policy, Dkt. 36-4, along with the reports which form the basis by which these calculations were made. Defendant has not submitted any opposition.

**1. Delinquent Contributions**

"An employer's failure to contribute an agreed upon amount to a benefit plan pursuant to a collective bargaining agreement is an ERISA violation creating a right of action for the benefits due." *Masino v. A to E, Inc.,* No. 07-CV-3462, 2009 WL 5184340, at *2 (E.D.N.Y. Dec. 21, 2009) (citation modified). ERISA, 29 U.S.C. § 1132(g)(2), authorizes the Funds to recover:

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of –
>
> > (i) interest on the unpaid contributions, or
> >
> > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

Section 1132(g) "thus creates a mandatory right to interest, liquidated damages, and attorney's fees in any case in which a judgment in favor of the plan is awarded." *Masino*, 2009 WL 5184340, at *2 (quoting *Trs. of the Bldg. Servs. 32B-J, Pension, Health & Annuity Funds v. Linden Realty Assocs.,* No. 94-CV-1358, 1995 WL 302454, at *7 (E.D.N.Y. May 8, 1995)) (citation modified). To the extent that plaintiffs are entitled to damages under the CBA and its

incorporated documents, but such relief falls outside the scope of ERISA, they may recover such amounts under the LMRA. *See* 29 U.S.C. § 185(a); *Argila v. FAC Constr. & Painting Corp.*, No. 24-CV-6340, 2026 WL 1207275, at *7 (E.D.N.Y. Apr. 30, 2026), *report and recommendation adopted*, 2026 WL 2256090 (E.D.N.Y. July 30, 2026); *Trs. of Loc. 7 Tile Indus. Welfare Fund v. All Flooring Sols.*, LLC, No. 19-CV-126, 2020 WL 9814088, at *6–7 (E.D.N.Y. Feb. 12, 2020).

Defendant was bound to a CBA agreement with the Union. Hill Decl. ¶ 3 at ECF page 2. The Funds and defendant ELA Stone Corp. have not provided written notice of their intent to terminate the CBA. *Id.* ¶ 5 at ECF page 3. In relevant part, the CBA required defendant to submit contributions to the Funds for all work performed by individuals employed by ELA Stone Corp. within the trade and geographical jurisdiction of the Union in accordance with rate schedules set forth in the CBA. *Id.* ¶ 6. The CBA and the Collection Policy also stated that if an employer fails to pay contributions as provided for in the agreement, the employer shall pay, in addition to the amounts due and unpaid, interest charged on the delinquent contributions owed to the Local Funds at a rate of 10 percent per annum, interest charged on the delinquent contributions owed to the International Funds at a rate of 15 percent per annum, liquidated damages in the amount of 20 percent of the amount of delinquent contributions owing, and attorneys' fees and costs. Am. Compl. ¶¶ 25, 32.

The Funds conducted an audit of defendant based on an incomplete production of books and records in 2024. Vouvoudakis Decl. ¶¶ 12–16. Based on the analysis of the limited records of defendant, the Funds' auditors determined that for the period June 17, 2019 through December 31, 2023, defendant failed to remit contributions owed to the Funds in the principal amount of $51,887.10. Vouvoudakis Decl. ¶ 25; Dkts. 37-3, 44.

An audit is entitled to a presumption of correctness, which may be overcome only if "the employer can raise a genuine issue of material fact as to the accuracy of the calculations made by the plan." *Top Stone & Tile*, 2025 WL 3461041, at *7–8, *adopted by* 2026 WL 609388 (E.D.N.Y. Mar. 4, 2026); *see Trs. of the New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Inniss Constr., Inc.*, No. 20-CV-6894, 2021 WL 2556130, at *3–4 (S.D.N.Y. May 13, 2021), *report and recommendation adopted*, 2021 WL 2555840 (S.D.N.Y. June 22, 2021); *All Flooring Sols.*, 2020 WL 9814088, at *8. Upon review of the Audit Report (Dkt. 37-3 at ECF page 1; Dkt. 44 at ECF page 1), and absent any opposition by the defaulting defendant, this Court recommends granting plaintiffs damages in the amount of **$51,887.10**[6] in delinquent contributions. *See Kimo Tile*, 2026 U.S. Dist. LEXIS 154719, at *15-16; *Top Stone & Tile*, 2025 WL 3461041, at *7-8, *adopted by* 2026 WL 609388 (E.D.N.Y. Mar. 4, 2026); *Annuity, Pension, Welfare & Training Funds of Int'l Union of Operating Eng'rs Loc. 14-14B v. Cent. Enters., Inc.*, No. 11-CV-973, 2012 WL 4891564, at *3 & n.3 (E.D.N.Y. Oct. 15, 2012) (relying on audit report in granting summary judgment where "defendant has not challenged the accuracy of the audit or the validity of plaintiffs' claims"); *see also Bricklayers Ins. & Welfare Fund v. Verse Inc.*, No. 12-CV-4271, 2013 WL 4883966, at *5 (E.D.N.Y. Sept. 11, 2013) (adopting report and recommendation that "credit[s] the audit as a sufficient basis to award damages").

**2. Interest on Unpaid Contributions as Determined by the Audit**

Under ERISA, plaintiffs are entitled to prejudgment interest on unpaid contributions. *See* 29 U.S.C. § 1132(g)(2)(B). ERISA provides that "interest on unpaid contributions shall be

[6] Based on the audit, the Local Funds are entitled to $43,969.80, and the International Funds are entitled to $7,917.30 ($43,969.80 + $7,917.30 = $51,887.10). Dkt. 37-3 at ECF page 2; Dkt. 44 at ECF page 2.

determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26." 29 U.S.C. § 1132(g)(2). Pursuant to the CBA and Collection Policy, where an employer fails to pay contributions as required, the employer shall be responsible for "interest on delinquent contributions to the Local Funds at a rate of ten percent (10%) per annum, interest on delinquent contributions to the International Funds at a rate of fifteen percent (15%) per annum." Hill Decl. ¶ 11; Collection Policy, Art. II, § 5.

Plaintiffs have submitted an Audit Report (Dkt. 37-3), and Revised Audit Report (Dkt. 44) that includes an updated calculation of interest on the unpaid contributions. As per the Collection Policy, the Funds' auditors calculated interest on the delinquent contributions through October 31, 2024, in the amount of **$17,173.85**. *See* Dkts. 43–44. The Court accepts the audit's presumption of correctness and recommends awarding interest in the amount sought. *See Kimo Tile*, 2026 U.S. Dist. LEXIS 154719, at *17-18; *Top Stone & Tile*, 2025 WL 3461041, at *8, *adopted by* 2026 WL 609388 (E.D.N.Y. Mar. 4, 2026).

### 3. Interest Calculated to the Entry of Judgment

Plaintiffs seek interest on the delinquent contributions from November 1, 2024 until the entry of judgment. [Proposed] Default J., Dkt. 38-11. Applying the Collection Policy, the Court calculates interest on delinquent contributions to the Local Funds at a rate of 10 percent and interest on delinquent contributions to the International Funds at a rate of 15 percent. *See* Hill Decl. ¶ 11. Accordingly, the Court recommends awarding additional interest at the rate of $12.05 per day for the Local Funds ($43,969.80 x 10 percent / 365 days) and $3.25 per day for the International Funds ($7,917.30 x 15 percent / 365 days), for a total of **$15.30 per day for the Funds**. *See* Suppl. Vouvoudakis Decl. ¶ 14, Dkt. 43.

**4. Liquidated Damages**

"Section 502 of ERISA provides for liquidated damages in an amount equal to the greater of the interest due on the unpaid contributions, or up to twenty percent of the unpaid contributions as provided in the collective bargaining and trust agreements." 29 U.S.C. § 1132(g)(2)(C); *see also Sullivan v. Marble Unique Corp.*, No. 10-CV-3582, 2011 WL 5401987, at *6 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted*, 2011 WL 5402898 (E.D.N.Y. Nov. 4, 2011); *Gesualdi v. D. Gangi Contracting Corp.*, No. 18-CV-3773, 2019 WL 1130729, at *7 (E.D.N.Y. Feb. 11, 2019), *report and recommendation adopted*, 2019 WL 1128356 (E.D.N.Y. Mar. 12, 2019). Under the LMRA, liability for liquidated damages stems from the CBAs and Collection Policies. *See All Flooring Sols.*, 2020 WL 9814088, at *11.

Here, the Collection Policy provides for liquidated damages in the amount of twenty percent of the delinquent contributions owed. Collection Policy, Art. II, § 5 (Dkt. 36-4). Plaintiffs seek $9,138.81 in liquidated damages reflecting 20 percent of the contributions owed to the Funds. Suppl. Vouvoudakis Decl. ¶ 16, Dkt. 43; CBA, Art. IX, § 3(L), 5(G); Collection Policy, Art. II, § 5. Plaintiffs assess liquidated damages for only select funds. Dkt. 44 at ECF page 2; *see, e.g., All Flooring Sols.*, 2020 WL 9814088, at *11. As discussed above, the Court accepts the audit's presumption of correctness. This Court respectfully recommends awarding plaintiffs liquidated damages of **$9,138.81** based on the Audit Report. Dkt. 37-3 at ECF page 1; Dkt. 44 at ECF page 1; *see Top Stone & Tile*, 2025 WL 3461041, at *9 (relying on audit's presumption of correctness), *adopted by* 2026 WL 609388 (E.D.N.Y. Mar. 4, 2026).

**5. Audit Costs**

Plaintiffs seek audit costs of $3,200 for an audit conducted by Terry Vouvoudakis and Michael Sarosy. Vouvoudakis Decl. ¶¶ 12, 30. Courts may award "such other legal or equitable

relief as the Court deems appropriate," 29 U.S.C. § 1132(g)(2)(E), and regularly award reasonable audit costs. *See*, *e.g.*, *Gesualdi v. Andrews Trucking Corp.*, No. 09-CV-565, 2010 WL 2292218, at *1 (E.D.N.Y. May 14, 2010) (awarding plaintiffs $13,382.50 in audit fees), *report and recommendation adopted*, 2010 WL 2292392 (E.D.N.Y. June 3, 2010). "Requests for audit fees must be supported by records sufficient to allow the court to determine the reasonableness of the audit costs." *Trs. of Steamfitters' Local Union No. 638 v. Nexus Mech., Inc.*, No. 08-CV-3214, 2014 WL 1338377, at *8 (E.D.N.Y. Apr. 2, 2014) (citation modified). "The evidence in support of recovering audit fees must include, at a minimum, some breakdown of the auditors' rates charged and hours expended." *Gesualdi v. Diversified Carting, Inc.*, No. 10-CV-2561, 2014 WL 5475357, at *3 (E.D.N.Y. Oct. 29, 2014) (internal quotations omitted).

Under the Collection policy, plaintiffs are entitled to recover any expenses incurred in determining the amount of a delinquency, including reasonable audit and accounting expenses. Hill Decl. ¶ 12; Collection Policy, Art. II, § 5. The auditors billed at a rate of $80 per hour and charged the Funds $3,200 ($80 per hour x 40 hours = $3,200) in connection with the audit. Vouvoudakis Decl. ¶¶ 28–30. This Court finds the requested costs to be reasonable. Plaintiffs have shown satisfactorily that they incurred audit costs, and this Court respectfully recommends awarding plaintiffs those audit costs of **$3,200**. *See Top Stone & Tile*, 2025 WL 3461041, at *10 (awarding audit fees at rate of $80 per hour), *adopted by* 2026 WL 609388 (E.D.N.Y. Mar. 4, 2026); *All Flooring Sols*., 2020 WL 9814088, at *12.

**6. Post-Judgment Interest**

"The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (citing 28 U.S.C. § 1961(a)); *see also Indu Craft, Inc. v. Bank of Baroda*, 87 F.3d 614, 619 (2d Cir. 1996)

(prevailing party is entitled to post-judgment interest as a matter of right). The post-judgment interest rate in ERISA actions is tied to the formula set forth in 28 U.S.C. § 1961(a), which provides that post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a); *see also Genworth Life and Health Ins. Co. v. Beverly*, 547 F. Supp. 2d 186, 190 (N.D.N.Y. 2008); *Trs. of the I.B.E.W. Local Union No. 488 Pension Fund v. Norland Elec., Inc.*, No. 11-CV-709, 2015 WL 3581011, at *9 (D. Conn. June 5, 2015) ("Post-judgment interest is applicable in the ERISA context in the same manner in which it is awarded in other civil actions in which money damages are awarded."). Moreover, post-judgment interest "shall be computed daily [from the date of judgment] to the date of payment." 28 U.S.C. § 1961(b).

Here, plaintiffs seek an award of post-judgment interest in accordance with 28 U.S.C. § 1961. Pls.' Mem. at 14–15. This Court finds such an award to be mandatory, and respectfully recommends awarding plaintiffs post-judgment interest, to be calculated in accordance with 28 U.S.C. §§ 1961(a) and (b) from the date of the entry of judgment to the date of payment.

**D. Attorneys' Fees and Costs**

Plaintiffs seek to recover their attorneys' fees and costs in this action. *See* Pls.' Mem. at 12–14. Plaintiffs are entitled to an award of "reasonable attorney's fees and costs" under ERISA and the applicable CBA. *See* 29 U.S.C. § 1132(g)(2)(D); *Iron Workers Dist. Council of W. New York and Vicinity Welfare and Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1505-06 (2d Cir. 1995); *Board of Trs. of UFCW Local 342 Pension Fund v. Merrick Assoc. Mkt., Inc.*, No 11-CV-4310, 2012 WL 4049845, at *5 (E.D.N.Y. Aug. 21, 2012), *report*

*and recommendation adopted*, 2012 WL 4049996 (E.D.N.Y. Sept. 13, 2012). An award of attorney's fees and court costs is appropriate under the LMRA, pursuant to the parties' contractual obligations under the CBAs and Collection Policies. *See Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Antonelli Masonry, Inc.*, No. 18-CV-11127, 2019 WL 1755413, at *4 (S.D.N.Y. Apr. 19, 2019).

Under Second Circuit precedent, courts calculate a "presumptively reasonable fee" by taking the product of the hours reasonably expended and a reasonable hourly rate that reflects what "a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008) (internal quotation marks omitted). The "presumptively reasonable fee" is historically known as the "lodestar." *Id.* at 183. "The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the necessity of the hours spent and rates charged." *Fermin v. La Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 51 (E.D.N.Y. 2015); *see generally N.Y.S. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Second Circuit precedent requires movants to include "contemporaneous time records" that "specify, for each attorney, the date, the hours expended, and the nature of the work done" in support of fee petitions. *See Carey*, 711 F.2d at 1148. "Failure to do so results in denial of the motion for fees." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992). Fee petitions supported by "[a]ttorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records satisfy the rationale underlying *Carey* and suffice to permit recovery of attorneys' fees." *David v. Sullivan*, 777 F. Supp. 212, 223 (E.D.N.Y. 1991).

District courts may exercise broad discretion in determining the reasonableness of an attorneys' fee petition. *See Chocolatl v. Rendezvous Cafe, Inc.*, No. 18-CV-3372, 2019 WL 5694104, at *14 (E.D.N.Y. Aug. 16, 2019), *report and recommendation adopted*, 2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020). Courts often consider case-specific factors including the following:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3 (citation omitted).

The reasonable hourly rate should be consistent with the prevailing rates in the local legal community for "similar work by lawyers of comparable experience and skill." *See Reilly v. Commerce*, No. 15-CV-05118, 2016 WL 6837895, at *12 (S.D.N.Y. Oct. 31, 2016) (quoting *Noble v. Crazetees.com*, No. 13-CV-5086, 2015 WL 5697780, at *9 (S.D.N.Y. Sept. 28, 2015)). "Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community." *Elvey v. Silver's Crust W. Indian Rest. & Grill, Inc.*, No. 18-CV-0126, 2019 WL 3937126, at *14 (E.D.N.Y. July 3, 2019) (citing *Farbotko v. Clinton Cnty. of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005)). "The 'community' is generally considered the district where the district court sits." *Id.* (citing *Lochren v. Cnty. of Suffolk*, 344 F. App'x 706, 708 (2d Cir. 2009)).

The ordinary rates for attorneys in the Eastern District of New York are "approximately $300-$450 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates." *Dermansky v. Telegraph Media, LLC*, No. 19-CV-1149, 2020 WL

1233943, at *7 (E.D.N.Y. Mar. 13, 2020) (quoting *Rudler v. Houslanger & Assocs., PLLC*, No. 18-CV-7068, 2020 WL 473619, at *4 (E.D.N.Y. Jan. 29, 2020)). A $100 hourly fee for paralegals has been found reasonable. *See Musical Prods. Inc. v. Roma's Record Corp.*, No. 05-CV-5903, 2009 WL 3052630, at *10 (E.D.N.Y. Sept. 23, 2009) (citing *Morin v. Nu-Way Plastering*, No. 03-CV-405, 2005 WL 3470371 (E.D.N.Y. Dec. 19, 2005)). In addition to ordinary rates, courts also consider the complexity of a case, the time it requires, and any returns an attorney might expect from litigation. *See Sheldon v. Plot Commerce*, No. 15-CV-5885, 2016 WL 5107072, at *19 (E.D.N.Y. Aug. 26, 2016), *report and recommendation adopted*, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016) (quoting *Arbor Hill*, 522 F.3d at 184). The Court is mindful that cases of default are "relatively simple legal matters," but courts can still take an attorney's skill in a specialized field into account. *See Sheldon*, 2016 WL 5107072, at *19.

Here, plaintiffs seek $9,516.00 in attorneys' fees. *See* Pls.' Mem. at 14; Decl. of Maura Moosnick, Esq. in Supp. of Mot. for Default J. ("Moosnick Decl."), Dkt. 38 ¶ 23. One partner (Maura Moosnick), and one associate (Lilliana Iorfino) with Virginia & Ambinder, LLP ("V&A") billed plaintiffs for this matter. Moosnick Decl. ¶¶ 15–18. Plaintiffs seek fees of $8,204 for 22.9 hours worked by counsel, with Ms. Moosnick billing at a rate of $450 per hour and Ms. Iorfino billing at a rate of $340 per hour. Dkt. 38-9 (Billing Records). Plaintiffs also seek to recover additional fees of $1,312 for 8.2 hours of work performed by paralegals (or legal assistants) billing at the rate of $160 per hour. *Id.*

Plaintiffs have submitted time records that indicate the date, duration, and nature of the work performed by their counsel. *See* Billing Records, Dkt. 38-9. Ms. Moosnick, a 2021 graduate of Fordham University School of Law, is a partner at V&A. Moosnick Decl. ¶ 15. Ms. Iorfino is a 2021 graduate of Brooklyn Law School and an associate at V&A. *Id.* ¶ 16. In

addition to Ms. Moosnick and Ms. Iorfino, V&A billed its paralegals -- Eva Keating, Alice Gaalswyk, Jenya Polavarapu, and Abigail Frankel -- at a rate of $160 per hour for worked performed in connection with this matter. *Id.* ¶¶ 17–20.

The rates requested by counsel are on the higher end of the range usually awarded to similarly experienced attorneys in ERISA matters in this District. While this Court finds Ms. Iorfino's rate to be reasonable, Ms. Moosnick's rate is excessive. Both attorneys graduated law school in 2021, notwithstanding Ms. Moosnick's title as partner. "In the context of attorney's fees awards, one's title is not the dispositive inquiry; rather, it is one's experience, *i.e.*, skill and expertise, that weighs in favor of awarding a requested hourly rate." *Neri v. Abi Japanese Rest., Inc.*, No. 20-CV-581, 2022 WL 16755146, at *3 (E.D.N.Y. Sept. 15, 2022) (citation modified), *report and recommendation adopted*, 2022 WL 4596735 (E.D.N.Y. Sept. 30, 2022).

Given counsel's experience, this Court respectfully recommends awarding attorneys' fees for Ms. Moosnick at the rate of **$340 per hour** and for Lillianna Iorfino at the rate of **$340 per hour**. *See Restrepo v. Dynamic Fire, Inc.*, 819 F. Supp. 3d 158, 178-79 (E.D.N.Y. 2026) (reducing V&A partner rate to $330 per hour); *Toros Bros. Constr.*, 2025 WL 3265230, at *11 (approving blended rate of $333 per hour for V&A attorneys); *Trs. of N. Atl. States Carpenters Health, Pension, Annuity, Apprenticeship, & Lab. Mgmt. Cooperation Funds v. Dame Contracting, Inc.*, No. 23-CV-5254, 2024 WL 2293831, at *7 (E.D.N.Y. May 21, 2024) (awarding Ms. Moosnick $275 per hour); *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, & Skill Improvement & Safety Funds v. Genrus Corp.*, No. 20-CV-1837, 2022 WL 4586316, at *6 (E.D.N.Y. June 14, 2022*), report and recommendation adopted*, 2022 WL 4586348 (E.D.N.Y. Sept. 29, 2022) (approving requested rate of $250 per hour for V&A partner and associate).

As to Ms. Keating, Ms. Gaalswyk, Ms. Polavarapu, and Ms. Frankel, the Court considers the requested hourly rate of $160 per hour for paralegals to be unreasonably high in the context of this case. This Court respectfully recommends a modest reduction of the rate for paralegals to **$120 per hour**. *See Top Stone & Tile*, 2025 WL 3461041, at *10 (reducing paralegal rate to $100 per hour), *adopted by* 2026 WL 609388 (E.D.N.Y. Mar. 4, 2026); *Restrepo v. Dynamic Fire, Inc.*, 819 F. Supp. 3d 159, 164 (E.D.N.Y. 2026) (adopting reduced rate of $120); *see also Trs. of N. Atl. States Carpenters Health, Pension, Annuity, Apprenticeship, & Lab. Mgmt. Cooperation Funds v. Greenebuild LLC*, No. 24-CV-5060, 2025 WL 850476, at *5 (E.D.N.Y. Mar. 18, 2025), *report and recommendation adopted*, 2025 WL 1476458 (E.D.N.Y. May 22, 2025) (finding $120 per hour an appropriate rate for Ms. Frankel); *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Regimental Contracting, LLC*, No. 22-CV-3757, 2023 WL 2969471, at *6 (E.D.N.Y. Feb. 27, 2023) (approving a $115 per hour rate for Ms. Keating and Ms. Frankel).

Having determined the applicable billing rates in this case, this Court now turns to the reasonableness of the number of hours billed. In reviewing a fee application, the court should exclude "excessive, redundant, or otherwise unnecessary" hours. *See Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The court should examine each entry "with a view to the value of the work product of the specific expenditures to the client's case." *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997). If the court finds "that some of the time was not reasonably necessary . . . it should reduce the time for which compensation is awarded accordingly." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012).

Plaintiffs' counsel and paralegals together expended a total of 31.1 hours on this matter. Moosnick Decl. ¶ 23. This Court finds that the amount of time spent on this matter is within a reasonable range of time to prepare a complaint, amended complaint, motion for default judgment and a number of detailed declarations in support of the motion. *See Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity, & Apprenticeship, Skill Improvement & Safety Funds v. Shelbourne Constr. Corp.*, No. 19-CV-2312, 2020 WL 1668041, at *9 (E.D.N.Y. Mar. 5, 2020) (awarding V&A fees for 45.30 hours of work in a similar ERISA action), *report and recommendation adopted*, 2020 WL 1666461 (E.D.N.Y. Apr. 3, 2020); *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Loc. 1010 Apprenticeship, Skill Improvement & Training Funds v. PCM Contracting Corp.*, No. 20-CV-1834, 2022 WL 584536, at *10 (E.D.N.Y. Feb. 3, 2022) (awarding V&A fees for 39.4 hours of work in a similar ERISA action even though this amount was "slightly higher than the amount of time typically spent on such motions, [because it is still] within the range of reasonable hours expended in similar ERISA cases involving default judgment"), *report and recommendation adopted*, 2022 WL 580959 (E.D.N.Y. Feb. 24, 2022). Accordingly, this Court respectfully recommends awarding plaintiffs **$8,770** in attorneys' fees based on the following calculations:

| | **Hours worked** | **Hourly rate** | **Total** |
|---|---|---|---|
| Ms. Moosnick | 3.8 hours | $340 | $1,292 (3.8 x $340) |
| Ms. Iorfino | 19.1 hours | $340 | $6,494 (19.1 x $340) |
| Paralegals | 8.2 hours | $120 | $984 (8.2 x $120) |
| Total | 31.1 hours | | $8,770 |

Finally, plaintiffs seek $630.77 in costs, representing the filing fee, service fees, postage, and Lexis Nexis legal research fees. Pls.' Mem. at 14; Moosnick Decl. ¶ 25. Plaintiffs are entitled to recover "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (internal quotation marks and citation omitted). Plaintiffs have provided invoices and supporting documentation to support their request for costs. *See* Invoices and Postage Rates, Dkt. 38-10. This Court finds plaintiffs' costs to be reasonable, and respectfully recommends awarding plaintiffs **$630.77** in costs.

This Court, therefore, respectfully recommends awarding plaintiffs attorneys' fees and costs in the total amount of **$9,400.77.**

**Conclusion**

For the foregoing reasons, this Court respectfully recommends granting, in large part, plaintiffs' motion for default judgment against defendant on plaintiffs' ERISA and LMRA claims, and awarding plaintiffs the following relief:

(1) Delinquent contributions of **$51,887.10** for the period June 17, 2019 through December 31, 2023, interest in the amount of **$17,173.85**, liquidated damages of **$9,138.81**, and audit fees and costs of **$3,200**;

(2) Additional interest on delinquent contributions owed to the Funds in the amount of **$15.30 per day** to be calculated by the Clerk of the Court, from November 1, 2024 until the entry of judgment;

(4) Post-judgment interest calculated at the statutory rate; and

(5) Attorneys' fees of **$8,770** and costs of **$630.77**.

A copy of this Report and Recommendation is being electronically served on counsel. Further, this Court directs plaintiffs' counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail on defendant at its last known addresses, and by email (*i.e.,* metingurgen5353@gmail.com and micehbektas@gmail.com). Plaintiffs shall file proof of service on ECF by **September 11, 2026**.

Any objections to the recommendations made in this Report must be filed with the Honorable Eric R. Komitee within 14 days after the filing of this Report and Recommendation and, in any event, on or before **September 23, 2026**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam) (discussing waiver under the former ten-day limit).

**SO ORDERED**

Dated: Brooklyn, New York
September 9, 2026

s/ James R. Cho
James R. Cho
United States Magistrate Judge